November 28th, 1904.

————O————

No. 3519.

(Court of Appeal, Parish of Orleans.)

SAMUEL A. DICKSON vs. ABE MAYER.

Appeal from Civil District Court, Division "C."

N. R. and H. M. Roberts, for Plaintiff and Appellant.

Gustave Lemle, for Defendant and Appellee.

1.  Where a person acquires by purchase from the United States a specific subdivision of a section of the public lands said to contain a specific number of acres; and where, when subsequently surveyed by the Surveyor General, it is shown by the latter's return that the subdivision contains a less area than that stated in the purchaser's patent, it may be that the purchaser may claim reimbursement from the Government for the excess payment made, but it is certain that he cannot encroach on or draft from the remaining subdivisions of the section in order to make up his deficit.

2.  Where a sale is made with reference to known and definite boundaries, nothing more is intended to be conveyed than what is contained between the given boundaries, and a deficiency in quantity

33.

does not entitle the purchaser to demand either a rescission of the sale or a diminution of the price.

3. Where a tract of land was sold, not for so much per acre, but for a certain price for the whole; is described according to boundaries fixed by Government Survey, the Township, Range, Number of the Section and subdivision of the section being stated, and the deed declares that the tract contains a certain number of acres, "more or less," the sale will be considered as one *per aversionem.*

MOORE, J. This was a suit for diminution of price. The allegations of plaintiff's petition being, substantially, that he acquired of the defendant a certain tract of land for the price and consideration of $4000. or at the rate of $11.94-100 per acre and warranted to contain 335 acres; that the vendor was the owner of but 287.40 acres and to that extent only was plaintiff put in possession of the property sold; that there is hence a shortage of 47.60 acres, the value of which, at the rate of $11.94 per acre, is sought to be recovered.

The answer sets up various defenses, the main defenses, however, being: first, that the tract sold does in fact contain 335 acres and that plaintiff is in possession of that number of acres; and, second, that even if the tract does not contain that area the sale was one per aversionem, and that hence the purchasers can claim only such area as is within the metes and bounds described and set out in the act of sale.

There was judgment for the defendant as in case of non-suit and plaintiff appeals; which appeal the appellee answered by praying for an amendment in his favor rejecting absolutely plaintiff's demand.

The land which is the subject matter of this controversy was at one time swamps and overflow lands and a part of the public domain; and was and is embraced in Section 4 of Township 19, South Range 14, west side of Red River. This section, among other lands, enured to the State of Louisiana under Act of Con-

34

gress of the 2nd of March, 1849, and was selected by, and subsequently approved to, the State upon the official and approved survey of the entire township; subdivided into sections, of date 25th January, 1872; the survey of section 4 being made by subdivision of quarter sections, the boundary lines of which, being thus run and marked together with the reported area in each quarter section, were returned to, and approved by, the Surveyor General. Section 4 being but a fractional section each quarter thereof necessarily contained less than the usual 160 acres; the official reading of the survey of each quarter section as to area being as follows: The N.W. 1-4, 112.00 acres; the N. E. 1-4, 11.76 acres; the S. W. 1-4, 11.32 acres; the S. E. 1-4, 111.72 acres. Subsequent to its acquisition of this land the State sold to the defendant the N. W. 1-4; the S. W. 1-4 and S. E. 1-4 of Section 4, the act of sale declaring that the entire three quarters of the section thus sold contained 335 acres. Stll latter, to-wit, on the 31st of December, 1901, the defendant conveyed this property to the plaintiff. The property is thus described in the act of sale:

"The fractional west half of Section 4 and Southeast quarter of said Section 4 Township No. 19 North, Range 14 West in the Parish of Caddo, State of Louisiana, containing 335 acres more or less."

The price is not stipulated as so much per acre but is for a lump sum, to-wit, $4000, payable $1000 cash and the balance in three equal payments maturing in 1, 2, and 3 years.

The sole evidence in the record as to area of the property sold, is the official survey made thereof by the Government in 1872, as shown by the town-ship map produced in evidence by the plaintiff himself. That survey shows that the two one-quarter sections comprising the "west half of Section 4," as they are described in the act of sale, contain 223.32 acres, and that the Southeast 1-4 of the Section contains 111.72, making a total of 335.04 or a fraction over the amount set out in the act of sale, and that consequently the plaintiff has all the quantity of land which he

35

contends he is entitled to under his act of sale from defendant.

It is contended however by the learned counsel for the plaintiff that notwithstanding the fact that the official survey, the correctness of which is not disputed, shows that the Northwest quarter, Southwest quarter and the Southeast quarter of Section 4, the three one-quarter sections conveyed to the plaintiff, actually contain 335 acres, no title to the entire 335 acres ever passed from the United States to the State of Louisiana and, as a consequence, no title to that number of acres passed from the State to the defendant or could be conveyed by the latter to the plaintiff.

The argument is that, as shown by a patent issued by the United States on the 7th day of May, 1848, and consequently prior to the passage of the swamp land act under which the State acquired the property, the United States had conveyed to one A. D. Palmer the Northeast quarter of Section 4, declaring in the patent that the Northeast quarter of this Section contains 160 acres; and, as the official survey aforesaid shows that the Northeast quarter thus conveyed to Palmer contains but 111.76 acres, Palmer, or his heirs or his assignees, has the right to make up the deficit by appropriating land from the other quarter sections of of Section 4 which, when accomplished, would necessarily reduce the area in the remaining quarter sections of section 4 acquired by the plaintiff, to the extent claimed by him.

Pretermitting the fact that notwithstanding the property is now composed of opened and cleared lands and has been maintained for years past as a cotton plantation; that plaintiff has not been evicted from any part or portion of the land acquired by him; that he has not been sued nor threatened with suit concerning same; that neither Palmer, nor any one under him, has ever at any period of time, so far as this record shows, asserted, suggested or claimed any such right as is contended in his behalf; that

36

no valid sale of public lands can be made by the Government until they are surveyed and the survey approved, which survey returned and approved in the case of Section 4 was only made and had in 1872; there is nevertheless no authority, either in law or reason, for the exercise of the asserted right claimed for the Palmer patent. Palmer, or the owners under him of the Northeast quarter of Section 4 would have as much right to claim the deficit from the adjoining Section, (Section 3), as he has to claim if from any or all of the adjoining quarter sections of Section 4. He is absolutely without right to claim it of either. His remedy, if remedy he has at all, is to claim reimbursement from the Government, if he has paid for the Northeast quarter of Section 4 on the basis of 160 acres. He cannot appropriate any part or portion of land outside of the limits of the boundary lines actually run and marked in the survey returned by the Surveyor General.

The United States did not sell him 160 acres in Section 4. The Government does not sell its public lands that way. It sold him the Northeast quarter of Section 4, whatever may be its area. Section 2, 3, 4, and 5 Rev. Stat. U. S., points out that the sales of public lands may be, "at the option of the purchaser, in entire sections; half sections; quarter sections, half quarter sections and quarter quarter sections," payable, of course, according to the number of acres which each subdivision purchased may contain, and requiring that every person making application at any of the land offices of the United States for the purchase at private sale of a tract of land shall produce to the register a memorandum in writing describing the tract which he shall enter by the proper number of section, half section, quarter section, half quarter section or quarter quarter section as the case may be, and the Township and Range."

These provisions were adopted in 1820 and were therefore extant when Palmer made his purchase and he must be presumed

to have purchased in accordance therewith. They are cited to show that the area of lands sold by the Government serve only for calculating the sum total of the price to be paid for the section or the subdivision of the section sold, and that what is actually conveyed, and may be legally claimed, is only such number of acres as may be found within the confines of "the boundary lines actually run and marked in surveys returned by the Surveyor General whether of sections or subdivision of sections, and which surveys "shall be held and considered as containing the exact quantity expressed in such return." Par. 2 and 3, Sec. 2396, Rev. Stat. U. S. The purchase, therefore, of the Northeast quarter of Section 4 by Palmer, whether his title calls for 160 acres or not, gives him no right to claim of, or to draw from, the other quarter sections of Section 4, any part or portion of the lands embraced within the boundaries of their survey, so as to make up any alleged deficiency in his quarter section; hence there can be thus no deficiency in the land conveyed by the defendant to the plaintiff and he cannot recover.

There is, however, another and equally as fatal an objection to plaintiff's cause as that just stated. The sale from defendant to plaintiff was not of so many acres of land so much per acre. It was a sale of the whole tract for a certain price for the whole. The property is described as being within certain fixed and definite boundaries, these boundaries being established by the national government, the lands being sold from one fixed and definite boundary to another fixed and definite boundary, the Township, Range, and Number of the Section and designation of the sections subdivision being given, and the number of acres are described in the Act of sale as "more or less." These constitute, in our opinion, the sale as one *per aversionem* and entitles the purchasers to no diminution of price on account of disagreement in measure.

"Where a sale is made with reference to known and definite

boundaries, nothing more is intended to be conveyed than what is contained between the given boundaries, and a deficiency in quantity does no entitle the purchaser to demand either a rescission of the sale, or a diminution of the price." 2 Rob. 358; 19 La. 260; 10 La 324; C. C. 854; 2495.

In Gay vs. Lamoine, 26 A. 253, a plantation was sold for a certain price for the whole. The number of acres was described as "more or less." The sale was held to be one *per aversionem*, the Court saying "If he (the seller) had sold more than was mentioned in the deed, Lemoine (the buyer) would have taken the surplus; if he sold less, Lemoine must take less." Considering, therefore, that defendant is entitled to an absolute judgement in his favor rejecting plaintiff's demand the judgment appealed from which is only of non-suit must be amended in his favor and, as amended, affirmed.

It is therefore ordered, adjudged and decreed that the judgment appealed from be amended so as to entirely reject and disallow plaintiff's demand and that, as thus amended, it be and is hereby, affirmed. The costs of both Courts to be taxed against the plaintiff.

December 12th, 1904.

Writ refused by Supreme Court, February 27, 1905